**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PATRICK TALBERT,

     Petitioner,

-vs-
                           Case No.     8:05-CV-875-T-27MSS
                             Crim. Case No.   8:99-CR-78-T-27MSS

UNITED STATES OF AMERICA,

     Respondent.

                         /

## ORDER

**BEFORE THE COURT** are Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (hereinafter "amended motion") (CV Dkt. 5), Petitioner's memorandum of law in support of his amended motion (CV Dkt. 6), the Government's Response to the amended motion (CV Dkt. 13), and Petitioner's Reply to the Government's Response (CV Dkt. 15). After consideration and a review of the record, this Court finds that the amended motion should be **DENIED**.

### Background

On March 10, 1999, a federal grand jury returned a 20-count indictment charging Petitioner, PATRICK TALBERT (hereinafter"Petitioner" or "Talbert"), and six others as principals in Greater Ministries International Church of engaging in a fraudulent investment scheme that took in more than $400 million between 1993 and 1999 (CR Dkt. 3).[1] Following a lengthy jury trial, Petitioner was found guilty on March 12, 2001, of mail fraud conspiracy, money laundering conspiracy, mail fraud, money

---

[1]Talbert was charged in Counts 1 through 17 (CR Dkt. 3).

laundering, and conducting unlawful monetary transactions[2] (CR Dkt. 435).

Petitioner was sentenced on August 8, 2001, to a total of 235 months in prison (CR Dkt. 561). The Eleventh Circuit Court of Appeals affirmed Petitioner's convictions and sentence on November 10, 2003 (CR Dkt. 1028). *See Payne v. United States,* Case No. 01-14746 (11th Cir. 2003).

## Discussion

In his amended motion, Petitioner raises thirteen claims for relief.

## Ground One

Petitioner claims that his trial attorney was ineffective for advising him not to testify at trial. He asserts that if he had taken the stand, he would have asserted his innocence and shown that there was no attempt to defraud anyone. He also claims that his attorney should have insisted that Gerald Payne, one of Petitioner's co-defendants, take the stand because Payne's testimony could have convinced the jury that the defendants were not guilty of the charges.

Counsel is presumed to be competent to assist a defendant. *United States v. Cronic*, 466 U.S. 648 (1984). The burden, therefore, is on the accused to show that counsel was ineffective. *Id.* In order to do so, Petitioner must prove that his counsel was deficient, which requires a showing that counsel's performance was unreasonable under current professional norms. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Petitioner must also prove that the deficiency prejudiced the defense, which requires a showing that there is a reasonable probability that but for counsel's errors, the sentencing judgment would have been different. *Id.* at 694.

The right to testify in one's behalf at a criminal trial is a fundamental and personal right which

---

[2]The Court found that as a matter of law, the evidence was insufficient to sustain a conviction of the offense alleged in Count Five of the Indictment (CR Dkt. 449).

2

cannot be waived by defense counsel or the court. *See United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc), *cert. denied*, 113 S. Ct. 127 (1992). In *Teague*, the Eleventh Circuit held that it is defense counsel's responsibility to advise the defendant of this right and the strategic implications and "that the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance [under *Strickland*]." *Id*. at 1534.

The *Teague* court further stated that an attorney's performance would be deficient under the first prong of the *Strickland* test if counsel refused to accept the defendant's decision to testify and would not call him to the stand or, alternatively, if defense counsel never informed the defendant of the right to testify and that the ultimate decision belonged to the defendant. *Id*. Applying this test, the appellate court affirmed the conviction and rejected the ineffective assistance of counsel claim because the trial court, after an evidentiary hearing, found that counsel had advised the defendant of his right to testify, had advised him that he should not exercise that right and the defendant did not protest. *Teague*, 931 F.2d at 1535.

"Counsel's performance is deemed deficient if 'counsel refused to accept the defendant's decision to testify and would not call him to the stand . . . . Alternatively, if defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant,' defense counsel's performance would be deemed deficient." *United States v. Camacho*, 40 F.3d 349, 355 (11th Cir. 1994), *overruled in part on other grounds by United States v. Sanchez*, 269 F.3d 1250 (11th Cir. 2001)(quotation omitted). It is apparent from Petitioner's own allegations that counsel had advised Petitioner not to testify, and that Petitioner assented to his recommendation. At trial, the Court inquired into Petitioner's decision not to testify, and Petitioner unequivocally stated that it was his decision (CR Dkt. 733, pp. 14-15). Therefore, counsel's performance was not constitutionally deficient.

3

Moreover, Petitioner fails to show he was prejudiced because he did not testify at trial. Petitioner does not demonstrate that had he testified, there is a reasonable probability that the outcome of the trial would have been different. *See Strickland*, 466 U.S. at 694; *see also Burnett v. Collins*, 982 F.2d 922, 928 (5th Cir. 1993) (defendant bears the burden of proof on both prongs of the *Strickland* test). Furthermore, there was substantial evidence presented at trial demonstrating Petitioner's guilt (*See* CR Dkt. 483, p. 2), and the defendants presented a significant number of witnesses in their defense. *See Rodriquez v. United States*, 286 F.3d 972, 985 (11th Cir. 2002)(the weight of the evidence against defendant at trial, and the ability of defendant to present his defense through other evidence are factors in the consideration of defendant's claim of ineffective assistance of counsel for advising defendant not to testify at trial).

Finally, Petitioner asserts his attorney was ineffective for failing to insist that Gerald Payne testify at trial. "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Harris v. New York*, 401 U.S. 222, 225 (1971). At trial, Gerald Payne, a co-defendant in the case, exercised his right not to testify (CR Dkt. 733, pp. 12-14). A criminal defendant cannot be compelled to testify by defense counsel. *Teague*, 953 F.2d at 1532. Accordingly, Petitioner's counsel could not "insist" that Gerald Payne testify at trial.

**Ground Two**

In Ground Two, Petitioner contends that his attorney was ineffective for failing to object to the manner in which the Court calculated his sentence as to Count Two, which alleged a money laundering conspiracy under 18 U.S.C. § 1956(a)(1)(A)(I) and 18 U.S.C. § 1957. Count Two alleged that the objects of the money laundering conspiracy were mail fraud and money laundering. Petitioner complains that the jury did not specify which object of the conspiracy it found in reaching

4

its verdict and that counsel was ineffective in not objecting to that and the Court's application of the

sentencing guidelines as to Count Two. Petitioner's contentions are without merit. Moreover,

Petitioner cannot show any prejudice as a result of the jury not identifying which offense was the

object of the conspiracy since it had no effect on his sentence.

In determining the applicable sentencing guideline range, the Court grouped the offenses of

conviction pursuant to USSG § 3D1.2, since the offense level of the crimes of conviction all were to

be determined "largely on the basis of the total amount of harm or loss" and none were excluded

from the purview of that provision. *See* USSG § 3D1.2(d). Using that provision, since the offenses of

conviction involved "offenses of the same general type," the guideline calculation began with the

"offense guideline that produce[d] the highest offense level." USSG § 3D1.3(b). That was an offense

level 23, which this Court used as its starting point because the defendants had been convicted of the

crime of money laundering [18 U.S.C. § 1956(a)(1)(A)(I)] in Counts Eight through Twelve. *See*

USSG § 2S1.1(a)(1). As the calculations began at level 23, any question as to which offense, or both

for that matter, the jury found to have been the object of the money laundering conspiracy charged in

Count Two made no difference whatsoever. Regardless of which object of the conspiracy the jury

found in reaching its verdict, the calculation of Petitioner's guideline sentence range as to Count Two

started at base offense level 23. Because Petitioner cannot show prejudice, he fails to establish an

ineffective assistance of counsel claim under Strickland.

**Ground Three**

In Ground Three, Petitioner claims that his attorney was ineffective for failing to object to the

Court's sentence of 235 months, contending that it exceeded the statutory maximum, ten years.

Petitioner's contention is without merit. The 235 month sentence was a result of consecutive terms

5

of imprisonment as to certain counts, and no sentence as to any particular count exceeded the statutory maximum.

Petitioner's sentencing guideline range was calculated based on a final adjusted offense level of 37, and a Criminal History Category II (CR Dkt. 561). The resulting sentencing guideline range of imprisonment was 235 to 293 months. Petitioner was sentenced to a total of 235 months in prison; 60 months as to Counts 1, 3, 4, 6, and 7 concurrent; 120 months as to Counts 2, 8, 9, 10, 11, and 12 concurrent; and 115 months as to Counts 13, 14, 15, 16, and 17, concurrent with the other counts, but consecutive to Counts 2, 8, 9, 10, 11, and 12 (CR Dkt. 561).

U.S.S.G. § 5G1.2(d)(2000) provides "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law."

The sentence imposed, 120 months, on the counts carrying the highest statutory maximum, Counts 2, 8, 9, 10, 11, and 12 (money laundering and conspiracy to commit money laundering),[3] was less than the total punishment of 235 months. The imposition of consecutive sentences under U.S.S.G. § 5G1.2(d) was therefore mandatory. *United States v. Davis*, 329 F.3d 1250, 1254 (11th Cir. 2003), *cert. denied* 540 U.S. 925 (2003). Accordingly, pursuant to U.S.S.G. § 5G1.2(d), the Court ordered the 115 month sentence on Counts 13, 14, 15, 16, and 17 run consecutively to the sentences imposed as to Counts 2, 8, 9, 10, 11, and 12 in order to produce a combined sentence equal

---

[3] *See* 18 U.S.C. § 1956 which states in pertinent part that the statutory maximum for money laundering or conspiracy to commit money laundering is imprisonment for not more than twenty years.

to the total punishment of 235 months. The sentence is consistent with the Sentencing Guidelines, and counsel was not ineffective in failing to object to a correct application of the Sentencing Guidelines.

**Ground Four**

In Ground Four, Petitioner essentially asserts that his sentence violates the mandates of *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). *Blakely* claims are not retroactive, and nothing in *Booker* indicates that *Blakely* claims are retroactive. Further, the Eleventh Circuit Court of Appeals has specifically held that the *Blakely/Booker* rule "falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review." *Varela v. United States*, 400 F.3d 864,868 (11th Cir. 2005). *Accord Schriro v. Summerlin*, 124 S. Ct. 2519, 2526-27 (2004). Petitioner's sentence became final on April 28, 2004. *Blakely* was decided on June 24, 2004, and *Booker* was decided on January 12, 2005. As a result, Petitioner's *Blakely/Booker* claim is not cognizable in this action.

**Ground Five**

In Ground Five, Petitioner essentially claims that the Court erred when it enhanced his sentence for abuse of a position of trust. Respondent argues that this claim is procedurally barred because Petitioner did not raise the claim on direct appeal (CV Dkt. 13, pp. 8-11). Since Petitioner did not raise this issue on direct appeal, and could have, it is procedurally defaulted and cannot be challenged collaterally. *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) ("[F]ailure to raise a nonconstitutional ground on direct appeal generally precludes consideration of that argument

7

in a § 2255 motion."). A claim not raised on direct appeal is procedurally defaulted unless the

petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal.

*McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir.2001).  Petitioner cannot show cause for his

procedural default as he did not to raise the issue in his *pro se* Initial Brief on direct appeal.

To the extent Petitioner claims that he "adopted all of [co-defendant] Hall's issues on Appeal

and should have received the benefit of the Court of Appeals' [sic] ruling that there was no 'abuse of

trust' committed by Hall", Petitioner's claim is without merit.  If Petitioner did adopt co-defendant

Hall's argument on this issue, then it was raised on direct appeal and rejected (to the extent the issue

applied to Petitioner) by the Eleventh Circuit (CR Dkt. 1028).  "Once a matter has been decided

adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section

2255." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000)(quotation omitted).

**Ground Six**

In Ground Six, Petitioner claims his trial counsel was ineffective for failing to cite to code

and case law during the sentencing hearing.  Petitioner's claim is without merit.  The record reflects

that at the sentencing hearing, Petitioner's counsel objected to almost every paragraph of the

Presentence  Report and presented extensive argument on Petitioner's behalf (CR Dkt. 871).

Moreover, Petitioner fails to identify any code or case law counsel could have cited that would have

led to a more favorable sentence for Petitioner.  Therefore, he fails to show he was prejudiced

because counsel did not cite to code or case law during the sentencing hearing.

**Grounds Seven and Eight**

In Ground Seven, Petitioner argues that his counsel was ineffective for failing to object to the

amount of the Court's restitution order which he claims is more than the actual losses suffered by the

8

victims.  In Ground Eight, Petitioner claims that his counsel was ineffective for failing to object that the Court did not have the correct information to impose restitution.  Petitioner argues that because his counsel was ineffective, the Court should "vacate the restitution order."  (CV Dkt. 6, p. 13)

A § 2255 motion cannot be used by a federal prisoner challenging the restitution portion of his or her sentence, because § 2255 applies only to claiming the right to be released from custody. *Blaik v. United States*, 161 F.3d 1341, 1343 (11th Cir. 1998).  "[R]elief from restitution is a remedy not authorized by [28 U.S.C. § 2255]."  *Id*. at 1342.  Therefore, Petitioner may not challenge the restitution order under § 2255.

Moreover, this issue was raised on direct appeal and rejected by the Eleventh Circuit (CR Dkt. 1028), and therefore it cannot be re-litigated in this action.  *See United States v. Nyhuis*, 211 F.3d at 1343.

**Ground Nine**

In Ground Nine, Petitioner claims he was denied due process when the jury saw two U.S. Marshals accompany Petitioner into the courtroom through a side security door.  Initially, this claim is procedurally barred because Petitioner did not raise it in his Initial Brief on direct appeal. However, one of Petitioner's co-defendants, Betty Payne, did raise the claim in her Initial Brief (CV Dkt. 6, Ex. 4).  To the extent Petitioner argues he adopted this argument on direct appeal, it was rejected by the Eleventh Circuit (CR Dkt. 1028), and therefore it cannot be re-litigated in this action. *See United States v. Nyhuis*, 211 F.3d at 1343.

In any event, the claim has no merit.  At trial, Petitioner moved for a mistrial because the jury saw the U.S. Marshals accompany him into the courtroom (CR Dkt. 658, pp. 101-117).  At the time of the trial, Petitioner was in the custody of the U.S. Marshals because of an unrelated state criminal

conviction, and therefore it was necessary for the U.S. Marshals to be present in the courtroom and to accompany him into and out of the courtroom (Id., p. 103). The Supreme Court has stated that "it is possible that the sight of a security force within the courtroom might under certain conditions 'create the impression in the minds of the jury that the defendant is dangerous or untrustworthy'... However, 'reason, principle, and common human experience'...counsel against a presumption that any use of identifiable security guards in the courtroom is inherently prejudicial. In view of the variety of ways in which such guards can be deployed, we believe that a case-by-case approach is more appropriate." *Holbrook v. Flynn*, 475 U.S. 560, 569 (1986)(internal quotations omitted). "Whenever a courtroom arrangement is challenged as inherently prejudicial, therefore, the question must be not whether jurors actually articulated a consciousness of some prejudicial effect, but rather whether 'an unacceptable risk is presented of impermissible factors coming into play[.]'" *Id.* at 570. "All a federal court may do in such a situation is look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over." *Id.* at 572.

On one occasion during Petitioner's trial, the jury was brought into the courtroom, and while the last few jurors were finding their seats, a door on one side of the courtroom opened and Petitioner entered with one Marshal in front of him, and one behind him (Id., p. 103). There were no visible chains or handcuffs on Petitioner, and he was wearing a pin-striped suit and tie (Id., pp. 103; 114). The other defendants and counsel were already seated at their tables, and the Marshals accompanied Petitioner to his seat next to his attorney, then they took their seats in the back of the courtroom in the spectators section with approximately six witnesses who had been sitting there throughout the

10

entire trial (Id., pp. 103-04; 113-14). These circumstances did not pose an unacceptable threat to his right to a fair trial, and Petitioner fails to show actual prejudice. Accordingly, Ground Nine will be denied.

**Ground Ten**

In Ground Ten, Petitioner asserts that the government did not produce sufficient evidence showing that he had conspired with others to defraud members of Greater Ministries. He also argues that he was merely acting on his religious beliefs, and therefore his conviction violates his First Amendment right to freely exercise his religion.

Petitioner raised these claims on direct appeal, and they were decided adversely to him (CR Dkt. 1028). Accordingly, Petitioner may not re-litigate these matters in this action. *See United States v. Nyhuis*, 211 F.3d at 1343. Moreover, there was substantial evidence presented at trial establishing Petitioner's guilt (*See* CR Dkt. 483, p.2).

**Ground Eleven**

In Ground Eleven, Petitioner claims the government failed to disclose information that Greater Ministries gave out more than $500 million in "gifts" to individuals who had given money to Greater Ministries, and the failure to disclose this information violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). Petitioner claims that co-defendant Gerald Payne received monthly reports indicating the amount of "gifts" Greater Ministries gave out each month. He asserts that "[t]here would have been at least 3 years of reports in Pastor Payne's office which would have shown that Greater Ministries had 'gifted' out at least $500 million during this same period of time." (CV Dkt. 6, p. 19).

Initially, it is clear that Petitioner was aware of this information prior to his trial and direct

11

appeal.[4]  Therefore, because he did not raise this issue at trial or on appeal, and could have, it is

procedurally defaulted and cannot be challenged collaterally. *Richards v. United States*, 837 F.2d at

966.

Moreover, Petitioner fails to establish a *Brady* violation. "In order to establish a *Brady*

violation, a defendant must prove: (1) that the government possessed evidence favorable to the

defense, (2) that the defendant did not possess the evidence and could not obtain it with any

reasonable diligence, (3) that the prosecution suppressed the evidence, and (4) that a reasonable

probability exists that the outcome of the proceeding would have been different had the evidence

been disclosed to the defense." *United States v. Schier*, 438 F.3d 1104, 1106 n.1 (11th Cir. 2006)

(citation omitted).  Petitioner fails to establish that he could not obtain the evidence with reasonable

diligence, that the prosecution suppressed the evidence, or that the result of the trial would have been

different had the evidence been disclosed to him.

"*Giglio* error is a species of *Brady* error that occurs when the undisclosed evidence

demonstrates that the prosecution's case included perjured testimony and that the prosecution knew,

or should have known, of the perjury." *Ventura v. Att'y Gen., Fla.*, 419 F.3d 1269, 1276-77 (11th

Cir. 2005)(quoting *United States v. Agurs*, 427 U.S. 97 (1976)).  Petitioner does not allege that the

prosecution knew or should have known its case included perjured testimony.  Accordingly,

Petitioner's *Brady* and *Giglio* claims have no merit.

**Ground Twelve**

In Ground Twelve, Petitioner claims his counsel was ineffective for failing to attempt to have

the charges against him dismissed on the ground that one year before the Indictment was returned in

---

[4]Petitioner had access to all seized documents during discovery (CR Dkt. 90).

1999, Petitioner had resigned as an elder of Greater Ministries and stopped participating in the Greater Ministries' gifting program.  Petitioner apparently argues that he was not subject to the charges against him because he resigned from Greater Ministries and stopped participating in the gifting program prior to the date the Indictment was handed down.

Petitioner and his co-defendants were charged with activities extending from March 1993 through January 1999 (CR Dkt. 3).  There was substantial evidence presented at trial proving that Petitioner participated in these activities during this period. Petitioner is not immune from prosecution for his crimes merely because he stopped participating in the illegal activities at some point prior to the date the Indictment was handed down.  Accordingly, Petitioner's attorney was not ineffective for failing to move for dismissal of the charges against Petitioner.

**Ground Thirteen**[5]

In Ground Thirteen, Petitioner essentially claims his attorney was ineffective for failing to move for recusal of the Undersigned.  Petitioner asserts that his attorney should have known that Petitioner would not likely receive a fair trial because the Undersigned stated that he did not want to see any Bibles or praying in the courtroom, and that showed the Undersigned had a personal bias against Petitioner.

Initially, in his amended motion Petitioner states "Mr. Talbert requests that if Judge Whittemore is still bias, that Judge Whittemore to recluse [sic] himself." (Dkt. 6, p. 20).  To the extent that this may be read as a request that the Undersigned recuse himself from this case, the Court is compelled to deny the request because it is factually insufficient to support a request for

---

[5]In its response, the government does not address this claim (CV Dkt. 13).

13

recusal. *See* 28 U.S.C. §§ 144 and 455.[6]  Specifically, Petitioner fails to present any facts that, if true, "would convince a reasonable man that bias exists." *Parrish v. Board of Com'rs of Alabama State Bar*, 524 F.2d 98, 100 (5th Cir. 1975).  Furthermore, there is no evidence or allegation that a judicial opinion about the case has been formed based on extrajudicial sources. *See Christo v. Padgett*, 223 F.3d 1324, 1334 (11th Cir. 2000) (quoting *Hamm v. Members of the Bd. of Regents*, 708 F.2d 647, 651 (11th Cir. 1983) (finding that "[t]he general rule is that bias sufficient to disqualify a judge must stem from extrajudicial sources . . . . Neither a trial judge's comments on the lack of evidence, rulings adverse to a party, nor friction between the court and counsel constitute pervasive bias."). Petitioner's conclusory statements do not demonstrate "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).  Finally, based on the allegations in Petitioner's motion, the Court finds that no reasonable person would conclude that a personal as opposed to judicial bias exists in this case. *See Mims v. Shapp*, 541 F.2d 415, 417 (3d Cir. 1973) (citing *Berger v. United States*, 255 U.S. 22 (1921)).  "A trial judge has as much obligation not to recuse himself when there is no reason to do so as he does to recuse himself when the converse is true." *United States v. Bray*, 546 F.23d 851, 857 (10th Cir. 1976) (citations omitted).

Because Petitioner's claim is factually insufficient to support a request for recusal, and wholly without merit, Petitioner's counsel was not ineffective for failing to move to recuse the

---

[6]A judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a), or "[w]here he has a personal bias or prejudice concerning a party," 28 U.S.C. § 455(b)(1).

Undersigned at trial.

### Evidentiary Hearing

There is no need for an evidentiary hearing as it "plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002).

ACCORDINGLY, the Court **ORDERS** that:

1. Petitioner's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV Dkt. 5) is **DENIED.**

2. The **Clerk** is directed to enter judgment against Petitioner, terminate any pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on _____July 8th_____, 2008.

JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy to:
Petitioner *pro se*
Counsel of Record